Bartley, J.
The main question presented in this case is whether the act of the 22d of March, 1849, amendatory to the act for the relief of occupying claimants, which gives to the occupying claimant, instead of the owner of the land, after a recovery in ejectment, the option either to take the land and pay the amount of the valuation without the improvements, or to take pay for his improvements, is constitutional ?
The first and second sections of this law are as follows:
“ Seo. 1. That the occupying claimant of land, holding by any such title, in such manner as is pointed out in the act for the relief of occupying claimants of land, passed March 10, 1831, of which this is amendatory, shall, after judgment rendered against him, and in favor of the successful claimant, have an option to demand payment from said successful claimant, of the full value of his lasting and valuable improvements made on the land in controversy, before the commencement of the suit, or to pay to the successful claimant the value of the land, without the improvements thereon, at his discretion.
“ Seo. 2. That if said occupying claimant shall elect to retain the land, he may tender to the successful claimant a sum of money equal to the value of the land in a state of nature; or, if he shall elect to receive payment for his improvements, the successful claimant may tender to him a sum of money equal to the value of his improvements; but if such tender shall, in either case, be refused, unless the jury impaneled under the provisions of the third section' of the said before-mentioned act, shall assess a larger sum in favor of the party so refusing than the amount tendered, exclusive of interest from the time of the tender, the pai’ty refusing shall pay the full costs of the proceeding. But if the jury shall' assess a greater sum than the amount so tendered, exclusive of interest, the party making the insufficient tender shall pay the costs, for which, if necessary, judgment may be rendered and execution issued as in other cases.”
466] *The original act, to which this is amendatory, gives to the real owner of the land the election to pay the occupying claimant *467 for his improvements and take the land, or to receive the amount of the valuation of his land in money, and give up his title.
The constitutionality of a law of this kind was contested for some years. The Supreme Court of the United States, in the case of Green v. Biddle, 8 Wheat. 1, determined that the oceupyingclaimant law of Kentucky, of 1812, was unconstitutional. This decision, however, was placed on the ground that the law impaired the obligation of the compact between Kentucky and "Virginia, relative to lands in the former state. The same court, in the case of the Bank of Hamilton v. Dudley’s Lessee, 1 Pet. 492, in which the statute of Ohio for the relief of occupying claimants came under review, conceded the legislative power of the state to secure to a bona fide occupant of land a compensation for the value of his-lasting improvements, and to authorize him to retain possession of the land he had improved until he shall have been paid that amount.
By the common law, improvements made on land are. considered as annexed to the freehold, and pass with it; so that when the owner recovers in ejectment he is not subjected to the condition of paying for any improvements which may have been made upon the land by the occupant. Although the occupant may be in possession in good faith, under color of title, and a mistaken supposition that helms the title to the land, yet, as against the true owner, he is an intruder and wrong-doer. And it would seem that there is no moral obligation which would require a person to pay for improvements-made upon his own land, which he never authorized, and which was-originated in a tort. But the occupant of land, under color of a bona fide purchase, has a strong equity in favor of a compensation for his lasting improvements, which have augmented the value of the-land. This equity arises from the mistake of the occupant, and the-neglect of the owner, whereby the labor of the former has inured to the benefit of *the latter. There are difficulties, however, [467 in sustaining this equitable claim consistently with the inviolability of private property. The improvements may be expensive, and beyond the ability of the owner to pay without a disposition of the land; besides, he may have a strong attachment for the property, and it might have answered all his purposes without the improvements.
To overcome these embarrassments, the learned French civilian, Pothier (see his Traite du droit de Propriete, No. 347), proposed *468 that the owner should be allowed to take possession, upon the condition that the payment of the value of the improvements should remain a charge upon the land, to be made by installments, under the regulation of the court. It appears to be a rule of the civil law, that in a suit for the rents and profits, against the bona fide occupant, the value of his lasting improvements may be deducted from the amount of the plaintiffs claim for damages; and Lord Hardwicke is reported to have intimated, in the case of Dormer v. Fortescue, 3 Atk. 134, that the rule of the civil law would be adopted in England, and the occupant sued in an action for the mesne profits, be allowed the value of his improvements, by way of set-off. • The original statute for the relief of occupying claimants, however, discarding all refinements arising out of the difficulties and embarrassments of the subject, requires the value of the permanent improvements of the bona fide occupant to be assessed and paid, as a condition precedent to the entry and possession of the owner. This encroachment upon the rights of private property, as settled by the common law, arose out of peculiar and pressing circumstances, produced by the liability to mistake, incident to the settlement of a wide extent of uncultivated land in a new country, where obscurity and uncertainty in land titles, by reason of conflicting locations, were unavoidable. This law was adjudged to be constitutional by the Supreme Court of this state, in the case of Hunt v. McMahon, 5 Ohio, 132, and its validity is not now an open question. The extent of this encroachment upon the common-law 468] rights of property is not to *divest the owner of-his fee in the land without his consent. The right of the owner to his land is secured, and he has the right to its restitution on paying the amount which its value has been increased by means of the improvements made by the occupant under color of title, and a mistaken belief that he was the owner of the land himself. The election which is here given to the owner, either to take his land on paying for the improvements, or to take the amount of its value in money, without the improvements, secures to the owner his right to the land, and at the same time protects the occupant in his equitable claim to a compensation for his improvements. And this is the greatest extent to which legislation had ventured on this subject, until the amendatory act of the 22d of March, 1849, the validity of which is now •called in question.
This amendatory act gives to the occupying claimant the option *469 ■which the original act gave to the owner of the land; thus giving the land itself to the occupant, who is without title, and requiring the owner to surrender his title without his consent.
The 19th section of the first article of the constitution declares that “ private property shall ever be held inviolate, but subservient to the public welfare,” etc.
"Where, under this statute of 1849, the land is taken away from the owner, and given to the occupying claimant, it is not taken under any claim of subserviency to the “public welfare.” It is not taken, either, under any pretense of a forfeiture or penalty incurred by the owner. But after the solemn form of a recovery in an action of ejectment, after the owner’s title has bee duly established, and a judgment in ejectment formally entered in his favor, and against the occupant as an intruder, the same court, by virtue of this statute, is required to direct the land to be taken from the owner without his consent, and even against his protestations, and given to the occupant who, by the judgment of the court, has been ordered to be ejected for want of title.
*It is true that there are many instances wherein liens [469 may be acquired by one person on the lands of another without his consent, and under which the lands will be liable to be sold and taken from the owner. But in such instances the owner is at all times, before the sale, at liberty to come forward and save his land by discharging the liens. Under this amendment to the occupying-claimant laws, however, the owner of the land is not allowed the advantages which the law extends to a debtor whose property is under execution. However able and willing to pay the full value of the improvements put on his land without his authority, the owner is compelled to give up his land; and that, too, not at the price he may fix upon it, nor even at the price for which it might be sold at a public sale to the highest bidder, but at a price to be fixed by a jury. And in the case now before us, although the owners of the lands offered to pay to the occupant the full value of their improvements, and protested against the occupant being allowed to elect to take their lands, yet the occupying claimants were allowed by the court below to take the lands, and judgment was rendered against the owners for the costs of the proceedings under the occupying-claimant law. ^
It is claimed in the defense that the constitutional provision above recited applies only to property in which the owner has a *470 distinct, perfect, and exclusive title, wholly unincumbered by the* claims or interests of other persons, and coupled not only with the-right of possession, but also with actual possession. This would give too limited an operation to that important safeguard which was designed to protect every person in his rights.of private property. The shield of the constitution covers. private property in, every form and condition in which it may be found. In case of a, mortgage, a judgment lien, a levy under an execution, or other incumbrances on land, arising out of the liability of the owner, it is* not within the scope of the legislative power to take the fee of the’ land from the owner, and transfer it absolutely to the person hold-470] ing the incumbrance, while the *owner stands ready and insists upon discharging the liability, and saving his property.
It is said that the occupying claimants in this case held a tax title, under which they had occupied for many years, and thus acquired a joint interest in the lands with the owners by the payment of the taxes and making improvóments on the land; and that the legislative authority gives a discretion in prescribing the mode of adjusting several distinct interests attaching to the same property.
It does not appear in this case under what kind of a claim the defendants.were in the occupancy of the land; but if it did, the-assumption of counsel for the defendants would be wholly unavailable. If the defendants had purchased the lands on a sale for the-taxes, and acquired a title, they could hold the entire interest in. the lands against the former owners for whose taxes they had been sold, and there would be no joint interest therein to adjust. But if the tax title were imperfect, they acquired no title as against, the former owners, and therefore could take nothing by it. All that could be claimed upon an occupancy under a defective tax title would be a claim of good faith in the occupancy of another’s-lands, so as to lay a foundation for an equitable claim to compensation for improvements and the payment of taxes.
The competency of the legislative power to transfer the property of one person to another without the consent of the former, is argued from analogy to proceedings in partition, the statute of limitations, etc. The right of partition is incident to the estate of tenancy in common, and the division is the result of necessity. But in this instance the property of one tenant is not taken against his consent and transferred to another, without an opportunity af *471 •forded him of saving his property by a purchase. The statute of limitations does not rest upon the authority to take the property of one person and transfer if to another, but upon a rule of evidence raising the presumption of a conveyance of title. By the policy of the law, lapse of time is made proof paramount *to [471 all other evidence that the title has passed, and the aid of the judicial power denied to a person who has slept upon his rights until there exists a rational presumption against his claim.
The oecupying-elaimant act is founded on no such ground as this ; ’ and in securing to the occupant' a compensation for his improvements as a condition precedent to the restitution of the lands to the owner, it goes to the utmost stretch of the legislative power touching this subject. And the statute of the 22d March, 1849, providing for the transfer of the fee in the land to the occupying claimant without the consent of the owner, is a palpable invasion of the right of private property, and clearly in conflict with the constitution. This statute is, therefore, by the unanimous opinion of the court, declared unconstitutional and void.
The proceedings of the court of common pleas, under the application for the benefit of the law for the relief of occupying claimants are reversed, and the cause remanded.